IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 7:20-cv-691 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Lisa G. ("Lisa") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Lisa alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess her mental impairments in the residual functional capacity ("RFC"); (2) evaluate the opinion of her treating psychiatrist; (3) determine her RFC using a function-by-function analysis; and (4) assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15) and **DENYING** Lisa's Motion for Summary Judgment (Dkt. 13).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Lisa failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lisa filed for DIB in February 2013, claiming that her disability began on January 12, 2011, due to agoraphobia, anxiety, panic disorder, social anxiety disorder, depression, post-traumatic stress disorder, chronic bronchitis, large hiatal hernia, stomach problems, and nausea.[4] R. 75, 189, 524. Lisa's date last insured was December 31, 2013; thus, she must show that her

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Lisa was 45 years old on her date last insured, which is considered a younger individual under the Act. R. 541.

2

disability began on or before this date and existed for twelve continuous months to receive DIB. R. 527; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). By Order dated August 30, 2019, the court vacated the Commissioner's decision on March 8, 2017 (R. 10–26) and remanded the case for further administrative proceedings and to issue a new decision related only to the period at issue, January 12, 2011 through December 31, 2013. R. 617–628, 632.[5] A hearing was held before ALJ David S. Lewandowski on June 22, 2020, where Lisa was represented by counsel, and vocational expert Mark Hileman testified by telephone. R. 551–81. On August 6, 2020, the ALJ entered his decision considering Lisa's claim under the familiar five-step process[6] and denying her claim for benefits. R. 524–42.

The ALJ found that Lisa did not engage in substantial gainful activity from her alleged onset date through her DLI. R. 527. The ALJ found that Lisa suffered from the severe impairments of obesity, major depressive disorder, generalized anxiety disorder, panic disorder, and cluster B personality traits. Id. The ALJ determined that Lisa's severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 527–30. The ALJ found that, regarding her mental impairments, Lisa had moderate limitations in understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and adapting or managing oneself. R. 528–30.

---

[5] Specifically, Lisa's claim was remanded as the ALJ failed to properly evaluate Lisa's mental RFC and failed to properly account for her moderate impairment in concentration, persistence, or pace.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ concluded that Lisa retained the residual functional capacity ("RFC") to perform light work with certain limitations. R. 530–540. Specifically, the ALJ found that Lisa could understand, remember, and carry out simple instructions and perform simple one to two step tasks, but could have no interaction with the general public and only occasional interaction with coworkers and supervisors. R. 530. Lisa should work independently and not in tandem with others. R. 531. Lisa could occasionally make work-related decisions and adapt to occasional changes in a customary workplace setting. Id. Lisa could never travel as a work duty or have fast-paced work, meaning work that requires rapid movement with a high productivity level, tight deadlines, or quick turnaround such as an assembly line worker or a server in a crowded restaurant. Further, she is expected to be off task ten percent of the workday. Id.

The ALJ determined that Lisa was unable to perform her past relevant work as a restaurant owner, but that she could perform jobs that exist in significant numbers in the national economy, such as a clothing bagger, housekeeping cleaner or shipment marker. R. 540–42. Thus, the ALJ concluded that Lisa was not disabled. R. 542.

## ANALYSIS

Lisa alleges that the ALJ failed to properly: (1) assess her mental impairments in the RFC; (2) evaluate the opinion of her treating psychiatrist; (3) determine her RFC using a function-by-function analysis; and (4) assess her allegations regarding her symptoms.

**A. Medical History**

1. Mental Health Treatment

Lisa has a history of mental health complaints, reporting suffering "emotional problems since 2003" during a consultative psychological examination completed on November 9, 2010

4

by Bruce Sellars, Psy.D.[7] R. 308–313. She also complained of panic attacks, frequent worry, and post-traumatic stress disorder ("PTSD"). Id. Dr. Sellars diagnosed Lisa with generalized anxiety disorder, depressive disorder, with possible recurrent major depression, possible PTSD, and possible social phobia. R. 312. Lisa received treatment at Jefferson Psychiatric Behavioral Medicine ("Jefferson Psychiatric") in January 2011, shortly after her alleged onset date and Susan Russell, CRNP, diagnosed generalized anxiety disorder. R. 508. Lisa attended follow-up visits in March, April and May 2011, and was generally found to be alert, oriented, relaxed, with good eye contact, and conversing logically. R. 510, 511, 512. Follow-up visits in 2011 and 2012 were similar, though Lisa was tearful at times, struggling with issues related to her parents and children, and was assessed with panic disorder; however, she also began therapy with her pastor and reported some improvement. R. 342, 351, 353, 354, 512.

Lisa transferred her care to Mental Health of America, presenting for her initial appointment in January 2013, where, on mental status examination, she was "friendly and cooperative," with clear and coherent speech, sad mood, fair to good insight and judgment, and above average intelligence. R. 397–398. In May 2013, Dr. Robert Patten, Jr., M.D., assessed Lisa with generalized anxiety disorder and panic disorder without agoraphobia. R. 367. Lisa had follow-up visits at Mental Health of America with Enrique Perez, M.D., in 2013 and 2014 for medication management and therapy. Dr. Perez described her as "stable with chronic conflicts" including panic attacks and anxiety. R. 399–408.

Lisa consistently complained of feeling anxious and depressed during these visits, with some sessions showing worse symptoms and others showing improvement. In June 2013, Lisa

---

[7] The ALJ indicated that he considered this consultative examination for "background purposes only" as it was completed prior to Lisa's alleged onset date, for a previous application for disability benefits. R. 533.

complained of almost daily panic attacks and difficulty functioning. R. 401. From late 2013 through 2014, Lisa was "more stable" and "more positive," and she was generally assigned GAF[8] scores of 52, 53 or 54. See, e.g., R. 404, 405, 406, 407. Lisa also continued to follow-up with Helen Brewbaker, FNP, for medication management, reporting feeling anxious and depressed. R. 360, 365.

In 2014 and 2015, Lisa continued to report depression, anxiety, and a minimum of two panic attacks a week. R. 389, 406, 408, 419. In April 2014 and April 2015, Dr. Perez indicated that Lisa "remains stable at a low level of function." R. 406, 418. During a May 2, 2014 visit, Ms. Brewbaker determined that Lisa's anxiety and depression had deteriorated, and that Lisa presented as anxious, depressed, and apathetic. R. 392.

On March 19, 2015, Lisa saw Jitendra Desai, M.D., for an initial psychiatric assessment and reported "severe and crippling" panic disorder and agoraphobia that persisted since 2000. R. 412. Dr. Desai found that Lisa was alert and oriented in all spheres and answered questions in an appropriate manner, but her mood was apprehensive and tense, affect was tearful, and she focused on the negatives in her life. R. 413. Dr. Desai diagnosed Lisa with panic disorder with severe agoraphobia, major depression, and post-traumatic stress disorder, and recorded her GAF as 41. Id. At follow-up visits in 2015 and 2016, Lisa reported continued panic attacks and Dr. Desai found that her depression and anxiety were stable; that her thought processes, though logical, were tangential at times; that she had impaired attention/concentration; and fair insight and judgment. R. 410, 414, 415–417, 468, 472, 489.

---

[8] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev.2000). A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

2. <u>Medical Opinion Evidence</u>

In December 2013 and October 2014, respectively, state agency physicians Alan D. Entin, Ph.D., and Andrew Bockner, M.D., reviewed the record and found that Lisa had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 80, 94–95. Drs. Entin and Bockner both concluded that, due to anxiety, Lisa could perform simple one to two step tasks, but would have difficulty with more detailed and complex tasks and should not be required to work around other people. R. 82–83. Dr. Bockner also found that "due to her severe anxiety" Lisa would have difficulty adapting to change and traveling to unfamiliar places. R. 98. The ALJ gave limited weight to state psychological consultants' opinions as he found Lisa was more limited in the domains of understanding, remembering, and applying information and adapting and managing herself. R. 539. The ALJ gave little weight to the state medical consultants' finding that Lisa had no severe physical impairments, writing that Lisa's "obesity is severe enough to limit her to light work." <u>Id.</u>

On March 31, 2016, Dr. Desai completed a Medical Opinion re: Ability to do Work-Related Activities (Mental) form. R. 420–24. Dr. Desai indicated either marked or extreme limitations in nearly all of the mental abilities needed for unskilled work, including marked limitations in the ability to carry out, understand, and remember very short and simple instructions, maintain attention for two-hour segments, perform at a consistent pace, and interact appropriately with the general public. R. 421. Dr. Desai found a mild limitation in Lisa's ability to ask simple questions or request assistance. <u>Id.</u> Dr. Desai also concluded that Lisa would be absent more than three times a month, based on his diagnoses of major severe depression and recurrent panic disorder. R. 424. The ALJ gave Dr. Desai's opinion no weight, noting that Lisa

7

did not begin treating with him until more than a year after the date last insured, and that his opinion is "not consistent with the record." R. 539–540.

On February 18, 2020, Evelyn F. Adamo, Ph.D., reviewed Lisa's records and determined that the evidence supports diagnoses of generalized anxiety disorder, panic disorder, and panic disorder with agoraphobia. R. 703. However, Dr. Adamo also found that there was insufficient objective evidence to assess Lisa's mental functioning during the period at issue with respect to her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage herself. R. 704. The ALJ gave this opinion no weight. R. 540.

### B. Mental Impairments under SSR 96-8P

Lisa argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Lisa asserts that the ALJ failed to properly address her mental impairments and thus provided an incomplete hypothetical question to the vocational expert about her concentration, persistence, or pace or her limitations in interacting with others Pl.'s Br. at 20–31, Dkt. 14.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010));

8

Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

9

This is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in <u>Mascio</u>, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitation in concentration, persistence, or pace, Lisa can perform the basic mental demands of simple work, with the specified accommodations. Further, here, the ALJ explained why Lisa's moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself, did not translate into a limitation in the RFC beyond "no interaction with the general public and occasional interaction with coworkers and supervisors but should work independently and not in tandem with others" and having up to "occasional decision making and changes in the workplace." R. 530–531.

As a preliminary matter, contrary to Lisa's argument, the ALJ adequately supported his finding that Lisa could sustain work activity over the course of an eight-hour workday and accounted for Lisa's moderate impairments in his hypothetical questions to the vocational expert ("VE") and the RFC finding in his ruling. The ALJ asked the VE to consider "an individual of the claimant's age, education, and work experience who[] . . . is able to understand simple instructions and perform simple, one- or two- step tasks . . . should have no interaction with the public but occasional interaction with co-workers and supervisors, but should work independently and not in tandem with others. . . .The individual can occasional make decisions and can adapt to occasional changes in the customary workplace setting." R. 573. Substantial evidence supports the ALJ's development of Lisa's RFC as discussed below. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See <u>Fisher v. Barnhart</u>, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing <u>Johnson v.</u>

10

Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

The ALJ acknowledged Lisa's subjective reports and testimony that she complained of intermittent panic attacks, depression, and anxiety. R. 529. He also considered Lisa's medical history, including treatment notes indicating that her attention and concentration were impaired. Id. Nevertheless, the ALJ noted that Lisa reported adequate symptom control from psychiatric medications, without side effects, and that her providers did not observe that Lisa was overly distractible or slow when following treatment recommendations. Id.; see, e.g., R. 414, 468, 490. The ALJ also specifically described Lisa's activities of daily living, noting that she reported watching television, taking care of children or elderly relatives, and preparing simple meal and cleaning her house, which the ALJ found required at least some concentration and persistence. R. 235–236, 529. The state agency psychologists both found that Lisa "is able to perform simple 1-2 step tasks that do not require her to be around people." R. 83, 97.

I find that the ALJ adequately explained the RFC restriction that Lisa will be off task ten percent of the workday. R. 529–531. Specifically, he noted Lisa's complaints of concentration issues, difficulty with calculations, and deficits in mood and affect would cause moderate limitations in concentration and pace that would contribute to limiting Lisa to unskilled work, and also preclude fast-paced work and cause her to be off task ten percent of the day. Id.; See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental

11

Pageid#: 834

impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

The ALJ's reasoning is supported by the opinions of the state agency psychologists and the ALJ's consideration of the record. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Lisa's RFC.

### C. Mental RFC and Function-by-Function Analysis

Similar to the mental impairments argument, Lisa alleges that the ALJ's RFC findings are not supported by substantial evidence. Specifically, Lisa asserts that the ALJ failed to properly address her moderate limitations in concentration, persistence, or pace, and in interacting with others in her RFC and thus provided an incomplete hypothetical question to the vocational expert. However, as discussed above, the ALJ properly assessed her mental impairments in the RFC, and her argument amounts to a disagreement with the ALJ's RFC determination that Lisa is limited to simple work with certain limitations, essentially asking the court to reweigh the evidence.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See Social Security Ruling (SSR) 96-8p, 1996 WL 374184; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in

an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's RFC findings are supported by substantial evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. R. 22–28. Unlike the ALJ in Mascio, the ALJ in this case considered conflicting medical evidence and is "not left to guess about how the ALJ arrived at his conclusions." The ALJ's findings include a comprehensive analysis of Lisa's medical records regarding her mental impairments, the medical opinions, Lisa's hearing testimony, and the ALJ's conclusions. R. 527–542. The ALJ specifically explained the RFC, by discussing Lisa's testimony and report of a range of daily activities (R. 529, 530, 532, 537), and the opinions of record. R. 530–540.

13

Lisa asserts that the ALJ ignores significant and substantial evidence in the record contradictory to the ALJ's findings. However, the ALJ did not ignore any of this evidence, and to the contrary provided an extensive medical history regarding her mental impairments that affect her ability to concentrate and persist. In fact, the ALJ included Lisa's mental limitations in the RFC by stating that she "can have no fast work meaning work that requires rapid movement with a high productivity level, tight deadlines or quick turnaround such as an assembly line worker or a server in a crowded restaurant." R. 531.

The role of this court is not to reweigh the evidence, as Lisa urges, or substitute its judgment for the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Sullivan, 907 F.2d at 1456. Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

### D.  Dr. Desai's Opinion

Lisa argues that the ALJ did not properly evaluate Dr. Desai's retrospective medical opinion in March 2016. R. 420–424. Specifically, Lisa contends that "[a]lthough Dr. Desai did not begin treating plaintiff until March of 2015, he is able to render an opinion as to how long [Lisa's] limitations outlined in the form have been existed and persisted." Pl.'s Br. at 32, Dkt. 14.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[9] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.

---

[9] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed in February 2013 prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

14

2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. Arakas v. Comm'r, 983 F.3d 83, 107 (4th Cir. 2020). The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes

15

meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637).

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the retrospective opinion of Dr. Desai. The ALJ adequately explained the reasons for rejecting Dr. Desai's opinion, namely that Dr. Desai did not begin treating Lisa until March 2015, which is a little over a year after the DLI and deemed the March 2016 opinion as remote. R. 539. Further, the ALJ continued to explain that Dr. Desai's opinion "is not consistent with the record during the adjudicated period as detailed above in the 'B' criteria." R. 424, 539. The ALJ reference to his earlier analysis in the "B criteria" provides an explanation as to how Dr. Desai's opinions are not consistent with the record during the adjudicated period. Id. Further, the ALJ gave significant weight to the prior ALJ decision on January 11, 2011, finding it was consistent with the updated record and "does not show a significant change in [Lisa's] health and functional ability." R. 540.

Thus, the ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the weight afforded with specific reasons, including specific references to the medical record; See Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7–8, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Overcash v. Astrue, 2010 WL 5904394, at *6 (W.D.N.C. May 21,

16

2010). The ALJ considered the opinions of the treating and reviewing doctors, together with the evidence in the record, and determined that Lisa was capable of light work with limitations. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine a RFC that represents Lisa's functional capacity. Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to discount Dr. Desai's medical opinion.

### E. Subjective Allegations

Lisa asserts that the ALJ failed to explain how the evidence the ALJ cited establishes that Lisa's assertions are not fully supported. Pl.'s Br. at 35–46, Dkt. 14. Lisa testified that her mental condition including panic attacks, trouble concentrating and remembering, and difficulty dealing with others preclude her from work. Id. Lisa's argument essentially restates her arguments related to the ALJ's mental RFC findings and function-by-function analysis, analysis of Lisa's mental impairments, and weighing of medical opinions, addressed above. Lisa asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step,

objective evidence is *not* required to find the claimant disabled." Arakas, 983 F.3d 83 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ reviewed Lisa's medical history and her subjective allegations in detail and found that Lisa's statements regarding the severity of her limitations were not entirely credible because they were not fully supported by the objective medical evidence, her treatment history, or her daily activities. R. 537. Contrary to Lisa's argument that the ALJ erred by ignoring a recommendation of inpatient hospitalization in October 2012, which Lisa refused (R. 351), and a Third-Party Function Report completed by her niece, the ALJ did not ignore this evidence. Pl.'s Br. at 40, Dkt. 14. In fact, the ALJ acknowledged the Third-Party Function Report under SSR 06-3p and gave it little weight because her niece is not a disinterested party, it is unclear whether the report is based on her personal observations, and the reports were not consistent with the evidence on the record. R. 532. The ALJ was entitled to find that the objective medical evidence outweighed Lisa's subjective statements, and he provided a sufficient rationale for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective allegations and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion was thorough and applied the proper legal standard, and I will not reweigh the evidence.

Lisa further argues that the ALJ misinterpreted her daily activities, however unlike in Arakas, the ALJ accurately summarized and analyzed Lisa's report of activities as one factor in

18

his well-supported decision. R. 528–29, 532, 540 (finding that the RFC is "supported by the objective medical evidence of record, [Lisa's] testimony and reporting of daily activities, *and* the opinions of medical and psychiatric experts" (emphasis added)). Accordingly, I conclude that the ALJ supported his analysis of Lisa's subjective complaints with substantial evidence and that Lisa can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

I **RECOMMENDED** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Lisa's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: March 3, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge