IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA G., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-691 |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| of Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on March 3, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Lisa G. (Lisa) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Lisa filed an application for disability insurance benefits (DIB) on February 13, 2013, alleging disability beginning on January 12, 2011. This was Lisa's second application for disability benefits. She filed a previous application on September 5, 2008, which was denied at all administrative levels and on appeal to this court. Lisa G. v. Astrue, 7:11-cv-399 (W.D. Va. Jan. 15, 2013). The ALJ opinion in that case issued on January 11, 2011. In this case, Lisa seeks

disability beginning January 12, 2011. Lisa was 42 years old at the alleged onset date and her "date last insured" (DLI) was December 31, 2013. Therefore, in order to be entitled to DIB, Lisa must show that she was disabled between January 12, 2011 and December 31, 2013. On April 19, 2017, Lisa filed an application for Supplemental Security Income (SSI) and was found disabled as of that date.

Lisa alleges disability based on agoraphobia, anxiety, panic disorder, social anxiety disorder, depression, post-traumatic stress disorder (PTSD), chronic bronchitis, large hiatal hernia, stomach problems, and nausea. R. 211. On November 30, 2016, Lisa had a hearing in front of an administrative law judge (ALJ) who denied her request for relief. R. 10-26. The Appeals Council denied her request for review and Lisa appealed the denial of her claim to this court. On June 27, 2019, United States Magistrate Judge Robert Ballou filed a Report and Recommendation (R&R) in which he found that the ALJ had not properly evaluated Lisa's mental residual functional capacity (RFC) and failed to properly account for her moderate impairment in concentration, persistence, and pace. Judge Ballou found that the ALJ had failed to address whether Lisa could perform work on a sustained basis and also failed to explain what it meant that Lisa could work at a job without strict production quotas. Judge Ballou recommended remanding Lisa's case to the Commissioner and this court adopted the R&R and remanded the case. ECF Nos. 23, 26, 27 in <u>Greco v. Berryhill</u>, No. 7:18-cv-00039 (W.D. Va. Aug. 30, 2019).

On remand, Lisa appeared at a hearing in front the same ALJ who decided her case in 2016. In a determination dated August 11, 2020, the ALJ found that Lisa had severe impairments of obesity, generalized anxiety disorder, panic disorder, major depressive

disorder, and cluster B personality, but that none of her impairments met or equaled the criteria of a listed impairment. As part of that determination, the ALJ found that Lisa had moderate limitations in understanding, remembering, and applying information; in interacting with others; in concentrating, persisting, and maintaining pace; and in adapting or managing herself. R. 527-30.

The ALJ found that Lisa had the RFC to perform light work with additional limitations: She could understand, remember, and carry out simple instructions and perform simple one-to-two-step tasks. She could have no interaction with the general public and occasional interaction with coworkers and supervisors but should work independently and not in tandem with others. She could occasionally make work-related decisions. She was able to adapt to occasional changes in a customary workplace setting but could have no traveling as a work duty. She could have no fast-paced work, meaning work that requires rapid movement with a high productivity level, tight deadlines, or quick turnaround, such as an assembly line worker or a server in a crowded restaurant. She would be expected to be off task ten percent of the day. R. 531.

Based on this RFC and considering testimony from the vocational expert (VE), the ALJ determined that Lisa could not return to her past relevant work as a restaurant manager, but could do other work, such as that of a clothing bagger, housekeeping cleaner, or shipment marker, and that these jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that Lisa was not disabled. Lisa did not file exceptions with the Appeals Council, making the decision of the ALJ the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Lisa objects to several of the magistrate judge's conclusions. ECF No. 18.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

4

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §
636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the
court to a specific error in the magistrate judge's proposed findings and recommendations,'"
de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014
WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United
States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th
Cir. 1982)). "The district court is required to review de novo only those portions of the report
to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th
Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2
(E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those
objections by the plaintiff that are merely conclusory or attempt to object to the entirety of
the Report, without focusing the court's attention on specific errors therein."); Midgette, 478
F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover
all issues addressed by the magistrate judge; it contemplates that a party's objection to a
magistrate judge's report be specific and particularized, as the statute directs the district court
to review only 'those portions of the report or specified proposed findings or
recommendations to which objection is made.'") (emphasis in original). Such general
objections "have the same effect as a failure to object, or as a waiver of such objection." Moon
v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th
Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review
an issue de novo if no objections are filed. . . .").

5

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

**III. Judicial Review of Social Security Determinations**

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Lisa objects to the following findings by the magistrate judge: (1) The ALJ properly assessed Lisa's mental impairments under Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996); (2) Substantial evidence supports the ALJ's findings on Lisa's mental RFC; and (3) The ALJ properly considered Lisa's subjective allegations.

### A. Mental RFC

Lisa's first and second arguments are addressed together, as they are intertwined. The mental RFC assessment is discussed in SSR 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[3] or

---

[2] Detailed facts about Lisa's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 17) and in the administrative transcript (ECF No. 9) and will not be repeated here except as necessary to address her objections.

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or

meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id., SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing

---

medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id., SSR 96-8P, 1996 WL 374184 at *7.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms, and any description by medical sources, or nonmedical sources about how the symptoms affect activities of daily living and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

Id.

### (1) Ability to Sustain Work Over an Eight-Hour Day[4]

Lisa argues that the magistrate judge erred when he concluded that the ALJ adequately supported his findings that Lisa could sustain work activity over the course of an eight-hour workday and accounted for Lisa's moderate impairments in his hypothetical question to the VE. The ALJ asked the VE to consider a person with the same age, experience, and education as Lisa who was able to understand simple instructions and perform simple one- or two-step tasks, should have no interaction with the public but occasional interaction with co-workers and supervisors, and should work independently and not in tandem with others. The person could occasionally made decisions and could adapt to occasional changes in the workplace setting.

Lisa objects that the ALJ's hypothetical questions to the VE did not actually alert the VE to the existence of plaintiff's moderate limitations and cites in support <u>Widener v. Berryhill</u>, No. 7:17CV00225, 2018 WL 847250, at *5 (W.D. Va. Feb. 13, 2018). In <u>Widener</u>, the district court remanded a case because although the ALJ found that the plaintiff had a moderate limitation in the area of concentration, persistence, and pace, the only non-exertional limitation he posed to the VE was that the person was limited to simple, routine tasks involving no interaction with the general public and little to no interaction with coworkers or supervisors. <u>Id.</u> at *2. The court found this question insufficient given the ALJ's finding of a moderate limitation in the area of concentration, persistence, and pace. <u>Id.</u> at *3.

---

[4] The court notes that it only addresses Lisa's specific objections. <u>See</u> <u>Veney</u>, 539 F. Supp. 2d at 846. Lisa's broad objections that the magistrate judge erred in his conclusions, without reference to the record to show how the magistrate judge erred, are treated as general objections, which have the same effect as a failure to object. Nor does the court address any arguments where Lisa simply repeated an argument she made to the magistrate judge.

In Lisa's case, the ALJ limited the hypothetical person to jobs involving simple instructions and tasks to accommodate her moderate limitation in the area of understanding, remembering, and applying information. R. 528. He limited her to no work with the public and occasional interaction with coworkers and supervisors to accommodate her moderate limitation in interacting with others. R. 528-29. In order to account for her moderate limitation in concentration, persistence, and pace, which includes an individual's ability to sustain an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted breaks, the ALJ limited the hypothetical person to unskilled work, no fast-paced work, being off-task ten percent of the day, and needing limited interaction with coworkers to reduce distractions. R. 529. In considering Lisa's moderate limitation in adapting or managing herself, the ALJ limited her to jobs where she would have only occasional changes in the workplace and would not be required to travel. R. 530.

This case is different from Widener because the ALJ accounted for all the moderate limitations he found in the hypothetical question he posed to the VE. R. 573-74. In particular, the ALJ accounted for Lisa's moderate limitation in concentration, persistence, and pace by finding she could do only unskilled work, no fast-paced work, and that she would be off-task ten percent of the day. Therefore, Lisa's assertion that the ALJ did not alert the VE to her moderate limitations is not supported by the record and this objection is **OVERRULED**.

Lisa also argues that the magistrate judge erred when he found that the ALJ properly relied on the state agency medical experts' finding that she was able to perform simple tasks that do not require her to be around people. She argues that the state agency experts never specifically addressed her ability to perform one-to-two-step tasks on a sustained basis.

11

However, as part of the assessment of whether Lisa had limitations in concentration, persistence, or pace, the form completed by the state agency experts asks for a finding on whether the claimant can "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 83, 97. Both experts found that Lisa's ability to do so was moderately impaired. Lisa's argument that the experts did not consider her ability to maintain concentration, persistence, and pace on a sustained basis is not supported by the record and therefore is **OVERRULED**.

Lisa further argues that the ALJ ignored evidence in the record where Lisa complained to providers regarding her ability to maintain concentration, persistence, or pace. She lists records of visits to providers that she claims the ALJ ignored. However, a review of the record shows that the ALJ described in detail the reports from every visit Lisa claims he ignored. Compare Objs., ECF No. 18 at 3 (listing medical records at R. 360, 370, 379, 401, 403, and 381) with R. 535-37. Lisa's argument to the contrary is wholly unsupported by the record and thus is **OVERRULED**.

### (2) Activities of Daily Living

Lisa next claims that the magistrate judge erred when he found that the ALJ properly considered her activities of daily living when he noted her reports that she watched television, took care of children and elderly relatives, prepared simple meals, and cleaned her house. Lisa claims that the ALJ mischaracterized her activities because he did not explain how her ability to perform limited, intermittent activities led him to conclude that she could perform substantial gainful activity over the course of an eight-hour workday.

In Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018), the Fourth Circuit commented that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." The ALJ also must explain how the activities of daily living show that the claimant can persist through an eight-hour workday. Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017).

In Woods, the ALJ found that the claimant could maintain her personal hygiene, cook, perform light household chores, shop, socialize with family members, and attend church on a regular basis. Woods, 888 F.3d at 694. However, the ALJ did not consider the claimant's statements that she could not button her clothes, had trouble drying herself after bathing, sometimes needed help holding a hairdryer, could prepare simple meals but sometimes had trouble cutting, chopping, dicing, and holding silverware or cups, that it took her all day to do laundry, she shopped only for necessities and it took a long time, that when she read to her grandchildren, they had to turn the pages for her because of severe pain in her hands, and that she spent entire days on the couch. Id. at 694-95. The court based its decision to remand the case on another issue, but stated that on remand, the court should consider both the type of activities and the extent to which the claimant performed them in assessing her credibility. Id. at 595.

In Brown, the ALJ found that the claimant testified to daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping. Brown, 873 F.3d at 263. However, the ALJ did not acknowledge that Brown simply prepared meals in the microwave, could drive only short distances without discomfort, only occasionally did laundry and looked at coins, later discontinued church attendance, and limited his shopping to thirty

minutes once a week. Id. The court found that the ALJ did not explain how Brown's activities showed that he could persist throughout an eight-hour workday. Id.

In Lisa's case, the ALJ found that Lisa watched some television, prepared simple meals, cleaned her house, and took care of her children and elderly relatives, all of which required some concentration and persistence. R. 529. Lisa asserts that the ALJ did not consider the limited nature of the activities she performed.

However, Lisa stated in her function report that she watched television "off and on" and watched some television after dinner in the evening. R. 234. She also stated that she watched television daily, but sometimes just has it on for the noise. R. 238. The ALJ's finding that Lisa watched "some" television is not inconsistent with her description. Regarding meal preparation, Lisa stated that she prepared frozen food, cereal, eggs, simple meals, and microwaveable meals. R. 236. The ALJ found that she prepared simple meals, which again is not inconsistent with her testimony. In describing housework, Lisa said she washed dishes once a day, did laundry once a week, and vacuumed and dusted once or twice a month with help from her children for the heavier cleaning. R. 236. The ALJ's finding that Lisa "cleaned her house" is consistent with this description of activities. Lisa also stated that there were days she does not get up much while her children are at school, R. 234, 561, 568, 569 and the ALJ acknowledged her testimony. R. 533.

Regarding taking care of her parents, Lisa's mother was in a nursing home during much of the relevant period and moved out of state in May 2012. Her father was at home until he died in December 2011. Lisa did provide some care for both of them, but also noted that she did it "on a slower pace." R. 512. Before her father died, he was asking a neighbor for rides

14

and would take the bus to see his wife. R. 510-12. Although it does not appear that Lisa provided a lot of hands-on care for her parents, it is not inconsistent with the record for the ALJ to have found that the care that she did provide required some degree of concentration, persistence, and pace.

The court finds that this is not a case like <u>Woods</u> or <u>Brown</u> where the ALJ misstated the record with regard to Lisa's daily activities. Rather, he accurately reported the activities to which Lisa testified and the information she provided on her disability forms. In addition, the ALJ accounted for the limited nature of Lisa's activities by finding that she had moderate limitations in the broad areas of mental functioning. A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c). The ALJ also accounted for Lisa's limitations by restricting her to jobs requiring simple instructions and tasks, limiting interaction with the public and coworkers, and limiting decision-making and changes in the workplace. The court agrees with the magistrate judge that the ALJ accurately reported Lisa's daily activities and accounted for the limited nature of her activities in the RFC. Lisa's objection to the contrary is **OVERRULED**.

### (3) Opinion of Treating Physician

Lisa objects that the magistrate judge erred when he found that the ALJ properly determined to give no weight to the opinion of one of Lisa's treating physicians, Jitendra Desai, M.D. Lisa began seeing Dr. Desai in March 2015, more than one year after her DLI, and in March 2016, Dr. Desai completed a form entitled "Medical Opinion Re: Ability To Do Work-Related Activities (Mental)." Dr. Desai checked boxes indicating that Lisa suffered from

marked and extreme impairments in several areas of functioning, such that if the opinion were given significant weight, Lisa would be considered disabled by her impairments. R. 420-24. The ALJ gave Dr. Desai's opinion no weight, because the 2016 opinion was inconsistent with the record during the adjudicated period, as set forth in the "B" criteria of the ALJ opinion. R. 539, 527-30. The ALJ also declined to give Dr. Desai's opinion any weight because the doctor did not begin to see Lisa until more than a year after her DLI. R. 539.

The magistrate judge found that the ALJ's decision to accord no weight to Dr. Desai's opinion was supported by substantial evidence. In the medical source opinion, Dr. Desai checked "yes" on a box asking if Lisa's condition had existed and persisted with the restrictions as outlined since January 12, 2011. R. 423. However, he did not provide a narrative explanation for that finding or explain how he arrived at that conclusion given that he did not begin treating Lisa until March 2015. The magistrate judge found that the retroactive opinion of Dr. Desai was at odds with the substantial evidence in the record from the relevant time period and that the ALJ did not err in giving the opinion no weight. As an additional reason for giving Dr. Desai's opinion no weight, the magistrate judge found that the ALJ properly accorded significant weight to the January 11, 2011 administrative opinion which found Lisa to not be disabled.

"Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." Bird v. Comm'r Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). In Bird, the claimant alleged that he suffered from PTSD based on his combat experiences in Vietnam from 1967 through 1970. Id. at 339. Bird had no medical records

16

dating before his DLI of March 31, 2005. Id. He applied for disability benefits from the Department of Veterans Affairs (VA) in 2006 and eventually was given a 100 percent disability rating, based in part on psychological examinations performed by the VA in 2006 and 2007. Id. Bird also applied for Social Security disability benefits in 2006 but was denied benefits because of the lack of medical evidence created before his DLI and the fact that the VA rating decision became effective fifteen months after his DLI. Id. at 340.

The court found that the ALJ should have given retrospective consideration to the post-DLI psychological evaluations because a 2007 evaluation indicated that Bird had suffered from extreme symptoms of PTSD since he returned home from Vietnam and well before his DLI. "Although the psychological examinations conducted by the VA did not offer retrospective diagnoses, their substance related to Bird's history of impairments." Id. at 341. In addition, Bird's testimony and that of his wife were consistent with the post-DLI medical evidence. Id. at 342.

Lisa objects that in her case it was error to discount Dr. Desai's opinion as being too remote from her date last insured. However, in Lisa's case, unlike in Bird, there is a great deal of medical evidence from the relevant period, cited and summarized by the ALJ, indicating that Lisa's psychological impairments caused only moderate limitations in her ability to function. See Engle v. Berryhill, No. 1:16CV398-FDW-DSC, 2017 WL 5492193, at *2 (W.D.N.C. Oct. 6, 2017) (finding ALJ properly rejected post-DLI medical evidence when providers did not begin treating claimant until years after her DLI and that the opinions contradicted contemporaneous records from claimant's then treating physician). The existence

17

of the medical evidence from the relevant period undermines Lisa's argument that Dr. Desai's opinion should be considered.

Lisa also argues that the magistrate judge "ignored the fact that state agency physicians routinely review records from the remote past and render opinions adopted by the Social Security Administration despite the fact that the opinions are rendered after a claimant's DLI." Objs., ECF No. 18 at 7. While this may be true, there is no indication on the form Dr. Desai completed that he reviewed records "from the remote past." To the contrary, the form asks for Dr. Desai's opinion based on his examination of how Lisa's mental and emotional capabilities were affected by her impairments. R. 420 (emphasis in original). Nor do his treatment records indicate that he reviewed Lisa's past medical records. R. 412-24.

Finally, Lisa argues that Dr. Desai's opinion was consistent with the opinion of Bruce Sellars, Psy.D., who performed a consultative examination of Lisa in November 2010. R. 308-18.[5] Dr. Sellars opined that Lisa had two marked limitations, one in her ability to make judgments on complex work-related decisions, and one in her ability to respond appropriately to usual work situations and to changes in a routine work setting, but otherwise had no limitations. R. 490-91. To say that Dr. Desai's opinion was consistent with Dr. Sellars' opinion is an overstatement of the level of impairment assessed by Dr. Sellars. Moreover, the ALJ accounted for the limitations noted by Dr. Sellars in his RFC assessment.

[5] The ALJ explained that he discussed Dr. Sellars' opinion, which was rendered prior to the alleged onset date and presumably considered in the January 11, 2011 denial of benefits, to offer background and context for Lisa's current disability application. R. 533.

For the above-stated reasons, the court agrees with the magistrate judge that the ALJ properly explained why he gave no weight to Dr. Desai's opinion.[6] Lisa's objection to this finding is **OVERRULED**.

### B. Subjective Allegations

### (1) Third Party Function Report

On September 9, 2014, Lisa's niece completed a form entitled "Function Report – Adult Third Party" on Lisa's behalf. R. 264-74. The niece described Lisa as being severely impaired, unable to sleep, not changing her clothes or bathing, eating only when reminded, doing very light cleaning and some laundry with constant reminders, not driving because of frequent panic attacks, and being confined to her home except for appointments with providers. The ALJ cited Social Security Ruling, SSR 06-03p.: Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, SSR 06-03p, 2006 WL 2263437 (S.S.A. 2006), which contains a discussion of how the ALJ is to consider opinions from non-medical sources, including people such as the claimant's spouse, parents, friends, and neighbors. In considering the opinions of such sources, the ALJ considers factors such as the nature and extent of the relationship, whether

---

[6] Regarding the magistrate judge's finding that the ALJ gave Dr. Desai's opinion no weight in part because the ALJ properly accorded significant weight to the January 11, 2011 administrative opinion which found Lisa to be not disabled, the court finds that the magistrate judge misread the ALJ opinion. The ALJ discussed Dr. Desai's opinion in one paragraph at R. 539. In the next paragraph at the top of R. 540, the ALJ discussed the weight to be given to the January 11, 2011 administrative decision, which is governed by Social Security Acquiescence Ruling (AR) 00-1(4), which in turn addressed the Fourth Circuit opinion in Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999). Based on AR 00-1(4), the ALJ gave significant weight to the prior administrative decision. R. 540. Reading the ALJ opinion as a whole, the ALJ did not rely on the prior administrative decision to find that Dr. Desai's opinion was entitled to no weight. Rather, he cited AR 00-1(4) to explain his assessment of the weight given to the prior administrative decision.

the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

The ALJ discussed the form submitted by Lisa's niece but gave it little weight because while it was consistent at points with Lisa's allegations, the allegations themselves were not consistent with objective medical findings. The ALJ further found that it was unclear to what extent the niece's allegations were based on her own observations as opposed to Lisa's self-reports. Also, the ALJ noted that the niece could not be considered a disinterested third-party witness whose report would not tend to be colored by affection for Lisa and a natural tendency to agree with the symptoms and limitations she alleged. R. 532. The magistrate judge found that the ALJ was entitled to find that objective medical evidence outweighed Lisa's subjective allegations and that he provided a sufficient rationale for doing so.

Lisa objects that a third-party function report cannot be rejected solely on the basis that it was completed by a family member because otherwise "there would be no point in obtaining 3rd party function reports because they would all be rejected." Objs., ECF No. 18 at 9. Lisa's objection ignores the directive in SSR 06-03p that the ALJ is to consider the nature and extent of the relationship between the claimant and the person preparing the report. Lisa also does not address the fact that the ALJ rejected the niece's report in part because it was not consistent with the objective evidence in the record. The court finds that substantial evidence supports the ALJ's determination to accord Lisa's opinion little weight and therefore **OVERRULES** Lisa's objection on this issue.

### (2) Lisa's Daily Activities

Lisa argues that the ALJ did not accurately summarize her reported daily activities and reiterates her argument that the ALJ improperly found that Lisa was providing a great deal of care to her elderly parents. This argument was addressed above and the court found that the ALJ accurately reported Lisa's daily activities and accounted for the limited nature of her activities in the RFC. The court agrees with the magistrate judge that the ALJ's assessment of Lisa's subjective allegations is supported by substantial evidence and **OVERRULES** her objection to this finding.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered:   05 – 21 – 2022

Michael F. Urbanski
Chief United States District Judge